UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
PACIFIC ELECTRIC WIRE & CABLE CO., LTD., :
ASIA PACIFIC WIRE & CABLE CORP., LTD.,   :
and KINBONG HOLDINGS LIMITED,            :
                                         :
            Plaintiffs,                  :
                                         :    03 Civ. 9623(JFK)
       -against-                         :
                                         :    <u>OPINION and ORDER</u>
SET TOP INTERNATIONAL INC.,              :
TOM CHING-YUN TUNG, TAI-SHENG LIEN,      :
FU-CHUAN TSAI, FU-NU TSAI,               :
JACK TAKACS a/k/a JOHN P. TAKACS,        :
ROBERT EVERETT WOLIN and                 :
JOHN DOES 1 THROUGH 10,                  :
                                         :
            Defendants.                  :
-----------------------------------------X

<u>APPEARANCES</u>:

For Plaintiffs:
      COUDERT BROTHERS LLP
      1114 Avenue of the Americas
      New York, New York 10036
      Of Counsel: Richard A. De Palma,Esq.
                  Brian T. Belowich, Esq.

For Defendant Robert Everett Wolin:
      PATTERSON, BELKNAP, WEBB & TYLER LLP
      1133 Avenue of the Americas
      New York, New York 10036
      Of Counsel: Philip R. Forlenza, Esq.
                  Kenneth J. King, Esq.
                  Nicolas Commandeur, Esq.


**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

## INTRODUCTION

In its previous Opinion and Order, dated March 11, 2005, the Court denied Plaintiffs' motion for dismissal of the Second Amended Complaint without prejudice pursuant to Fed. R. Civ. P. 41(a)(2). The Court also granted in part and denied in part motions by defendants Tung and Takacs to dismiss the claims against them. Defendant Robert Wolin ("Wolin") opposed Plaintiffs' Rule 41(a)(2) motion and moved for sanctions against Plaintiffs and their counsel, Coudert Brothers, LLP ("Coudert"). Prior to issuance of the Court's Order, Plaintiffs stipulated to a dismissal of the claims against Wolin with prejudice. The Court noted the dismissal in its Order and reserved decision on Wolin's sanctions motion. Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc., No. 03 Civ. 9623(JFK), 2005 WL 578916 at *1 (S.D.N.Y. Mar. 11, 2005). For the following reasons, the motion is denied.

## FACTUAL BACKGROUND

The Court has already set out a complete statement of facts in its previous Order. See Pac. Elec., 2005 WL 578916 at *1-4. Familiarity with these facts is presumed. To recap, Wolin is a partner in the Dallas office of Kirkpatrick & Lockhart Graham Nicholson LLP ("Kirkpatrick"), which was counsel to Pacific Electric Wire & Cable Co., Ltd. ("PEWC") when the following events occurred. PEWC owned approximately 72.84% of

2

the shares of Asia Pacific Wire & Cable Corp., Ltd. ("APWC") through its subsidiaries, Kinbong Holdings Limited ("Kinbong") and Pacific USA Holdings Corp. ("PUSA"). PUSA held 50.44% of the shares; Kinbong held 22.4%. In September 2001, PUSA pledged its APWC shares to Swiss Re Financial Corporation ("Swiss Re") in exchange for a letter of credit. In October 2003, Swiss Re assigned its rights in the shares to Set Top International Inc. ("Set Top") in exchange for $11.5 million. Around the same time, Kinbong pledged its APWC shares directly to Set Top in exchange for $4.1 million to be paid to Swiss Re in partial satisfaction of a debt owed to Swiss Re by PEWC and PUSA. In summary, Set Top acquired 72.84% of APWC for a total of $15.6 million, an amount Plaintiffs claimed was below book value.

Tom Ching-Yun Tung ("Tung"), the purported chairman of PEWC, consented to the Swiss Re-Set Top assignment agreement (the "Assignment Agreement").[1] Plaintiffs alleged that Tung, who was also chairman of PUSA and APWC, and a director of Kinbong, was also a beneficial owner of Set Top, or acted in concert with Set Top's principal shareholders. In essence, Plaintiffs claimed

---

[1] In the minds of those within an anti-Tung PEWC faction, Tung was removed from the PEWC chairmanship in December 2003 and replaced by Mr. Michael Lee. This faction, the "Sun" faction, claimed that Mr. Lee controlled the PEWC board and that only actions taken under his direction were authorized. Those who supported Tung, the "Tung" faction, claimed that Tung was still in charge. See Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc., 2003 WL 23095564 at *1 n.4 (S.D.N.Y. Dec. 30, 2003).

that Tung engineered Set Top's inexpensive acquisition of the
PUSA- and Kinbong-pledged APWC shares.

In November 2003, Set Top announced its intention to
put up for "public sale" the PUSA-pledged APWC shares, which had
been assigned by Swiss Re to Set Top.  On December 4, 2003, PEWC
and APWC, now with Coudert as counsel, filed a Complaint and
moved by Order to Show Cause for a temporary restraining order
("TRO") and a preliminary injunction preventing the disposition
of any APWC shares in Set Top's hands.[2]  As to Wolin, Plaintiffs
asserted fraud, RICO, fiduciary duty, conversion, negligence,
professional malpractice, and tortious interference with contract
claims.  On December 8, 2003, the Court issued a TRO <u>ex</u> <u>parte</u>.
At the TRO hearing, the Court queried the Coudert attorneys with
respect to the severity of the allegations against Wolin, a
member of the Bar.  Richard De Palma, Esq., responded: "Yes, sir;
they're very serious and they're not included lightly." (Tr.,
Dec. 8, 2003 Hrg. at 19).  It later became apparent that at the
TRO hearing, Mr. De Palma and his Coudert colleague, Michael
Hagan, Esq., had in possession two letters between Wolin and Set
Top's counsel.  This correspondence showed that Wolin was acting
in PEWC's best interests and diligently pursuing a buy-back

_____

[2] Coudert's representation of PEWC resulted from the battle
of the Sun and Tung factions.  In simplest terms, Coudert answers
to the Sun faction, and Kirkpatrick (Wolin's firm) answers to the
Tung faction.  Both firms purport to represent PEWC, but Coudert
filed the Set Top action in this Court on PEWC's behalf.

4

agreement. (<u>See</u> Hagan Decl. in Further Supp., Exh. N).  Messrs.
De Palma and Hagan failed to disclose the letters to the Court.

At the Order to Show Cause hearing on December 16,
2003, the Court requested an explanation for the missing letters
from Messrs. De Palma and Hagan. (Tr., Dec. 16, 2003 Hrg. at 41,
44, 51-52).  Both attorneys essentially apologized, claiming that
the letters were "a side issue" (Mr. De Palma) that "didn't merit
the court's attention." (Mr. Hagan). (<u>Id.</u> at 43, 53).  In its
Order dissolving the TRO, the Court chose not to highlight the
incident.  Rather, the Court remarked that "[n]othing in
plaintiff's submission proves any wrongdoing on Wolin's part."
<u>Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.</u>, 2003 WL
23095564 at *1 n.5 (S.D.N.Y. Dec. 30, 2003).

On January 27, 2004, Wolin's counsel, Patterson Belknap
Webb & Tyler LLP ("Patterson"), informed Coudert that a Rule 11
motion would be forthcoming unless Plaintiffs withdrew their
Complaint. (King Decl., Exh. 12).  The next day, Coudert
responded that Plaintiffs would withdraw all claims against Wolin
without prejudice except the malpractice claim. (<u>Id.</u>, Exh. 13).
Wolin agreed to this proposal, and the parties entered into a
stipulation.  No Rule 11 motion was filed.  On February 6, 2004,
Plaintiffs filed their First Amended Complaint, which reflected
the terms of the stipulation.  On February 24, 2004, Wolin filed
an Answer to the Amended Complaint.

Plaintiffs sought damages of $100 million on their surviving malpractice claim against Wolin. The Second Amended Complaint, filed on June 24, 2004, repeats the relatively few allegations against Wolin in the First Amended Complaint. In fact, there are only three: (i) he failed to advise Plaintiffs of the Assignment (2d Am. Compl. ¶¶ 85, 87); (ii) he knew that a buy-back agreement was not executed simultaneously with the Assignment Agreement, and he failed to ensure that a buy-back agreement was executed, thereby leaving PEWC's interests unprotected (Id. ¶ 89, 181); and (iii) he made misrepresentations to Plaintiffs at a November 2003 meeting by denying any connection with the Assignment and buy-back agreements. (Id. ¶ 90). Plaintiffs chose not to re-assert an allegation in the original Complaint that Wolin had joined with Tung and Takacs in laying the groundwork for the Assignment by introducing Swiss Re to Set Top. (See id. ¶ 63; Compl. ¶ 65).

While discovery crawled along in 2004, various settlements shrank the case. On July 2, 2004, PEWC, APWC and Set Top executed a settlement agreement, which permitted PEWC to purchase the APWC shares from Set Top for $25 million. (De Palma Decl. in Supp., Exh. A, Art. 1). The parties amended other areas of the agreement on July 15, 2004. (Id., Exh. B). On the same day, Patterson wrote to the Court on Wolin's behalf and requested an order compelling Plaintiffs to serve an amended complaint and

6

extending the discovery deadline. (King Decl. Exh. 20). Quite correctly, Wolin understood that the Set Top settlement "change[d] the landscape of this litigation significantly" and materially affected any claim for damages against the remaining defendants. (Id., Exh. 20 at 2). Wolin's remaining co-defendants, Tung and Takacs, requested a stay of discovery.

On July 19, 2004, Brian Belowich, Esq. of Coudert sent the Court a letter in opposition to the defendants' applications. This letter has been the subject of much ink spillage in this litigation. Mr. Belowich informed the Court that "a final settlement ha[d] not yet been reached between Plaintiffs and Set Top" and that "assuming a final settlement is reached, Plaintiffs' claims against Tung, Takacs and Wolin will not be impacted." (King Decl. Exh. 21). Wolin, as did his co-defendants when they were in the case, claims that this letter is misleading at best and a "deliberate deception" at worst. (See Wolin Joint Mem. at 21-22). Coudert defends the letter as "fully accurate and . . . in no way misleading." (Pl. Mem. in Further Supp. at 9). The Court ordered a final extension of discovery to October 4, 2004, but denied the other applications.

On July 20, 2004, one day after Mr. Belowich's letter, the attorneys for Plaintiffs and Set Top executed their stipulation of discontinuance. (De Palma Decl. in Supp., Exh. C). The Court so-ordered the stipulation on July 26, 2004. True to

7

their word, Plaintiffs continued to prosecute their claims against Tung, Takacs and Wolin.  On August 19, 2004, Plaintiffs added fuel to what was already a very hot fire by filing a grievance against Wolin with the Texas State Bar (King Decl., Exh 31).  The basis of Plaintiffs' grievance was that Wolin improperly withheld PEWC files that Plaintiffs had sought in a Request for Production of Documents. (King Decl., Exh. 30).  This problem resulted from the power struggle described in Footnote 2, _supra_, page 4.  Apparently, the new PEWC chairman, Michael Lee, terminated Wolin's representation and demanded the files.  (Pl. Mem. in Further Supp. at 32).  Because of the dispute over control of PEWC, Tung instructed Wolin not to turn over the files. (Wolin Joint Mem. at 13).  PEWC sought the documents in their First Request for Production, (King Decl., Exh. 30, Req. #52), and Wolin objected on the basis of privilege, among other things.  (_Id._, Exh. 32, Resp. #52).  As far as the Court knows, the Texas proceeding is ongoing.

On September 9, 2004, Wolin's video deposition was taken in Dallas. (De Palma Decl. in Supp., Exh. F).  On September 15, 2004, pursuant to the settlement, PEWC regained control of the APWC shares for $25 million. (_Id._ ¶ 28).  On September 22, 2004, Plaintiffs offered Wolin a full release in exchange for "a substantial settlement payment" to PEWC. (De Palma Decl. in Further Supp. ¶ 104).  Plaintiffs alternatively offered to

release Wolin without prejudice to any claims arising from issues other than the Set Top transactions. (Id. ¶ 108). The next day, September 23, 2004, Plaintiffs dispatched facsimiles to counsel for the remaining defendants, including Wolin, informing them that Plaintiffs had decided to discontinue the matter without prejudice and that the remaining depositions in Taiwan were canceled. (De Palma Decl. in Supp., Exh. I; King Decl., Exh. 28). This cancellation violated a Court Order, which required consent of the other parties or of the Court before alteration of the deposition schedule.[3] On September 24, 2004, Wolin rejected Plaintiffs' settlement offers and a proposed stipulation of discontinuance. (De Palma Decl. in Supp., Exh. L).[4]

Plaintiffs thereupon brought their Rule 41(a)(2) motion. Wolin opposed the motion and cross-moved for sanctions. In a declaration in response to Wolin's motion, Mr. De Palma of Coudert stated that Plaintiffs would not object to a discontinuance as to Wolin with prejudice "applicable only to the claims made in this case relating to the Set Top transactions." (De Palma Decl. in Further Supp. ¶ 15). At oral argument, Wolin

_____

[3] The deposition schedule so-ordered by Magistrate Judge Peck on July 28, 2004 provided that the schedule could "be changed by written signed agreement of counsel w/o need for court approval." It did not provide that one side could alter the schedule on its own authority without consulting the opposition or the Court.

[4] Defendants Tung and Takacs also rejected the proposed stipulation. (De Palma Decl. in Supp., Exh. K).

agreed to a dismissal with prejudice on these terms. (Tr., Jan. 31, 2005 Hrg. at 32-33). On February 1, 2005, the Court issued an Order, <u>inter alia</u>, dismissing Wolin with prejudice pursuant to the agreement in open court.

On March 11, 2005, the Court denied plaintiffs' Rule 41(a)(2) motion and directed the prompt completion of discovery in preparation for summary judgment motions and trial. On April 8, 2005, Plaintiffs filed their Third Amended Complaint. On May 18, 2005, a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1) was filed as to Plaintiffs, Tung and Takacs. APWC dismissed its claims in the Third Amended Complaint with prejudice; PEWC and Kinbong dismissed their claims without prejudice but agreed not to commence suit in New York state or federal court in connection with any claims or transactions in the Third Amended Complaint. The lawsuit is all but ended, with the exception of Wolin's instant sanctions motion.

Wolin seeks sanctions pursuant to 28 U.S.C. § 1927 and the inherent power of the Court.[5] He does not rely on Rule 11. Wolin asserts that Plaintiffs and Coudert (a) made misrepresentations to the Court; (b) initiated the action without any factual basis and pursued a meritless claim against him; (c) initiated the action without any intention of bringing it to

---

[5] Wolin also sought sanctions in the event the Court dismissed Plaintiffs' complaint under Rule 41(a)(2). The Court declined to do so; therefore, this portion of the motion is moot.

trial; (d) unreasonably multiplied the proceedings by continuing the action after the Set Top settlement, canceling depositions and delaying their Rule 41 motion; and (e) filed a baseless grievance with the Texas State Bar over a mere discovery dispute. (Wolin Joint Mem. at 21-25).

## DISCUSSION

### I.   LEGAL STANDARDS

Title 28 of the United States Code, Section 1927, provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The Court also may impose sanctions pursuant to its inherent power when attorneys or parties act "in bad faith, vexatiously, wantonly, or for oppressive reasons."  United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991) (internal quotation marks omitted).  "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both."  Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).

In this circuit, the Court may impose § 1927 or inherent-power sanctions only if there is "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith –- that is, motivated by improper purposes such as harassment or delay." <u>Eisemann v. Greene</u>, 204 F.3d 393, 396 (2d Cir. 2000). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 776 F.2d 383, 390 (2d Cir. 1985). While Rule 11 permits sanctions when a pleading or paper is interposed for an improper purpose <u>or</u> without sufficient grounding in fact or law, <u>see</u> <u>Eastway Constr. Corp. v. City of New York</u>, 762 F.2d 243, 254 (2d Cir. 1985), Section 1927 and inherent-power sanctions require clear evidence of both. <u>See</u> <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 194 F.3d 323, 336 (2d Cir. 1999).

A sanctions award is a powerful weapon in the Court's arsenal. District courts must tread carefully in this area, lest they "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." <u>Motown Prods., Inc. v. Cacomm, Inc.</u>, 849 F.2d 781, 785 (2d Cir. 1985). In particular, § 1927, a "statute with a punitive thrust," must be "strictly construed," <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 70 (2d Cir. 1990), and "inherent powers must be exercised with restraint and discretion." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 44 (1991).

## II. WOLIN'S ARGUMENTS IN SUPPORT OF SANCTIONS

### A. Misrepresentations to the Court

Wolin's first argument is that Coudert made repeated misrepresentations to the Court during this litigation. The Court is sympathetic. At the _ex parte_ TRO hearing, Coudert failed to disclose correspondence between Wolin and Set Top's counsel tending to show that Wolin had protected PEWC's interests by pursuing a buy-back agreement with Set Top. In a July 19, 2004 letter to the Court, Mr. Belowich of Coudert stated unequivocally that "a final settlement has <u>not</u> yet been reached between Plaintiffs and Set Top," even though the parties had already signed and amended a settlement agreement. While there is no question that it is bad faith to egregiously mislead a Court, particularly with respect to an _ex parte_ TRO, <u>Agee v. Paramount Communications, Inc.</u>, 869 F. Supp. 209, 211 (S.D.N.Y. 1994), the Court finds that the behavior of the Coudert attorneys, without more, is not enough to justify a sanctions award that flows from Plaintiffs or Coudert to Wolin.

The Court is in no way excusing Coudert's conduct. At the Order to Show Cause hearing, the Court made it very clear that the withheld letters should have been disclosed at the TRO hearing. (<u>See</u> Tr., Dec. 16, 2003 Hrg. at 52-53). The attorneys apologized, and the Court did not mention the incident again. The July 19, 2004 letter from Mr. Belowich, which stated that a

"final settlement" had not been reached, also was problematic. While it is true that a settlement agreement had been signed and amended, a stipulation of discontinuance had not been filed. The issue boils down to how one defines the phrase "final settlement." Though the Court is not inclined to believe that the letter was "fully accurate" and "in no way misleading," the letter does not seem to be an egregious misrepresentation. Suffice it to say that in future communications with this or any other Court, Mr. Belowich and his colleagues are advised to use terms with precision and to steer clear of semantic gamesmanship.

**B. <u>Plaintiffs' Initiation of the Action Without Adequate Basis and Pursuit of a Meritless Claim</u>**

In their original Complaint, Plaintiffs asserted RICO, fraud, fiduciary duty and conversion claims against Wolin and several other defendants. Wolin contends that Plaintiffs and Coudert had evidence in their possession that squarely refuted these allegations; for example, the missing letters. Wolin also claims that Plaintiffs sued him for malpractice without knowing what advice he gave to Tung. (Wolin Joint Mem. at 22-23). Plaintiffs protest their good faith and cite a host of reasons supporting their belief that Wolin breached a duty of good faith to PEWC. (Pl. Mem. in Further Supp. at 26-30).

Leaving aside the malpractice claim for a moment, the Court concludes that a sanctions award based on the withdrawn RICO, fraud, fiduciary duty and conversion claims is not

warranted. The parties stipulated less than two months into the litigation that Plaintiffs would withdraw the claims. This stipulation meant that Wolin avoided the task of bringing a Rule 11 motion as to all of the claims (which might have been unsuccessful), and Plaintiffs were able to prosecute the remaining malpractice claim. Both sides having benefitted from the bargain, the Court declines to find bad faith on Plaintiffs' side, particularly when the bargain was struck relatively quickly without the need for Court-ordered relief.

The sanctions cases cited by Wolin do not help his cause because they involve plaintiffs who repeatedly asserted frivolous claims despite warnings from the court that the claims were groundless. In <u>Lazzarino v. Kenton Associates, Ltd.</u>, 998 F. Supp. 364 (S.D.N.Y. 1998), the district court dismissed the complaint as lacking in specificity, only to have the Plaintiff file an amended complaint with almost identical allegations. <u>Id.</u> at 366. In <u>In re 60 East 80th Street Equities, Inc.</u>, 218 F.3d 109 (2d Cir. 2000), the Court of Appeals affirmed the district court's <u>sua</u> <u>sponte</u> imposition of § 1927 sanctions on an attorney for maintaining a frivolous appeal of a bankruptcy court decision, despite a warning from that court that his claim was meritless, and for directing "totally unsubstantiated abusive and slanderous statements" at his opponent and the bankruptcy court in his brief. <u>Id.</u> at 116-17. Finally, in <u>Tedeschi v. Smith</u>

Barney, Harris Upham & Co., 579 F. Supp. 657 (S.D.N.Y. 1984);

aff'd 757 F.2d 465 (2d Cir. 1985) (per curiam), Judge Weinfeld

sanctioned plaintiffs for launching a suit "intended as an in

terrorem force upon the defendants after neither party had

prevailed in [an] arbitration claim." Id. at 661. Most

egregious was a treble-damages claim of attorney misconduct under

Section 487 of the New York Judiciary Law. Judge Weinfeld,

citing Rule 11, warned the plaintiff that the claim was

frivolous, but the plaintiff declined to withdraw the claim. Id.

at 662. All of these cases are distinguishable from the instant

case because Plaintiffs withdrew their non-malpractice claims as

soon as Wolin threatened to bring a Rule 11 motion, and these

claims did not appear in subsequent versions of the complaint.

The malpractice claim presents a different issue

because Plaintiffs prosecuted this claim to the bitter end.

While Wolin is correct that the allegations in the complaint are

scanty for a $100 million malpractice claim, and the evidence in

the record tends to lean in Wolin's favor, the Court cannot say

for certain that Plaintiffs vexatiously multiplied the Court's

proceedings by pressing forward with a meritless claim. First of

all, Wolin never moved for a dismissal of the malpractice claim

in the Amended Complaint under Fed. R. Civ. P. 12(b)(6) or 12(c),

nor did he file a Rule 11 motion. While the Court is not

suggesting that Wolin conceded anything by answering rather than

16

moving for dismissal, his decision signaled a clear acceptance that the malpractice claim would be going to discovery. Wolin then agreed to a withdrawal of the claim with prejudice before the final, and most critical, set of depositions. One of the depositions would have been Tung's. In arguing that Plaintiffs had no intention of going to trial, Wolin notes that Plaintiffs canceled Tung's deposition even though Wolin's advice to Tung "was necessarily at the heart of any serious malpractice claim." (Wolin Joint Mem. at 23). True enough, but without Tung's testimony, the Court is dealing with an incomplete record. The Court cannot assume that the testimony of Tung or the other Taiwan deponents would have shown conclusively that the malpractice claim was colorless. While the evidence on record was certainly heading in that direction, the rest is speculation.

Wolin argues that the Plaintiffs were responsible for the final depositions not taking place. Also true, but Plaintiffs had no authority to "cancel" depositions unilaterally. Their doing so violated a clear order, and the Court in its March 11, 2005 Order took Plaintiffs' counsel to task for this action. Pac. Elec., 2005 WL 578916 at *5 ("As a general rule, it is good form for attorneys to contact the Court before disregarding one of its directives."). In that Order, the Court directed the remaining depositions to take place within three months. Id. at *16. The Court notes that at the time Coudert informed Wolin

that the depositions were cancelled, Wolin did not seek immediate relief from the Court, nor did he file a motion to compel pursuant to Fed. R. Civ. P. 37(a).

Prim v. Peatco Ltd. L.P., No. 90 Civ. 7272(LAP), 1994 WL 570754 (S.D.N.Y. Oct. 17, 1994) (Preska, J.), cited by Wolin, actually demonstrates that sanctions are not appropriate in the instant case. In Prim, the district court imposed sanctions under § 1927 where plaintiff's counsel instituted the action without adequate factual investigation or basis, reasserted meritless allegations in an amended complaint and continued the lawsuit even though discovery failed to support the claims. Id. at *3-6. Again, the reassertion of baseless allegations is a distinguishing point. Moreover, discovery had concluded in Prim, allowing the district court to state unequivocally that "discovery failed to produce any evidence in support of [the plaintiffs' claims." Id. at *6. In the case at bar, a critical phase of discovery was unfinished when the parties settled. The Court simply is not in the position to make the unequivocal finding, à la Prim, that discovery failed to produce any evidence to support Plaintiffs' malpractice claim.

Accordingly, the Court is unable to agree with Wolin that sanctions are warranted because of Plaintiffs' assertion of the claims against him in the original complaint and their continued assertion of the malpractice claim.

### C. **Plaintiffs' Intention to Go to Trial**

Wolin's next argument is that Plaintiffs initiated this action without any intention of bringing it to trial. (Wolin Joint Mem. at 23-24). If this were the standard for sanctions, many attorneys would be poorer for it. Because of the Court's denial of Plaintiffs' Rule 41(a)(2) motion, this case would have gone to summary judgment motions and trial had the parties not settled. Nor can it be argued that Plaintiffs did not pursue the case with diligence. The Court points out that Plaintiffs opposed the extension of the discovery deadline, granted by the Court, from August 20, 2004 to October 4, 2004. There is no other evidence in the record of dilatory tactics on the Plaintiffs' side. If anything, Plaintiffs were too aggressive in achieving their goals in this litigation, particularly in their communications with the Court.

Wolin notes that Plaintiffs' Rule 30(b)(6) witnesses were unprepared to state the basis of the $100 million malpractice claim; that Plaintiffs' counsel never questioned him during deposition about his advice to Tung; and that Plaintiffs had not retained an expert as of three weeks prior to the close of discovery. (Wolin Joint Mem. at 23). Even if true, these facts do not conclusively demonstrate a complete unwillingness to go to trial from the outset. The first two arguments go to the weight of the evidence in an incomplete record. As for the

third, it is true that Plaintiffs had not hired an expert when the parties appeared for a conference before the Magistrate on September 13, 2004. It is also true under New York law that in order to show negligence in a malpractice action, "unless the ordinary experience of the fact-finder provides sufficient basis for judging the adequacy of the professional service . . . or the attorney's conduct falls below any standard of due care . . . expert testimony will be necessary to establish that the attorney breached a standard of professional care and skill." Greene v. Payne, Wood & Littlejohn, 197 A.D.2d 664, 666, 602 N.Y.S.2d 883, 885 (2d Dep't 1993).[6] Magistrate Judge Peck gave the Plaintiffs another week to hire an expert. (Tr., Sep. 13, 2004 Hrg. at 11). If Plaintiffs failed to do so, a summary judgment grant dismissing the malpractice claim would have been a very strong possibility. See, e.g., Sitts v. United States, 811 F.2d 736, 742 (2d Cir. 1987). Nevertheless, Wolin has cited no precedent, and the Court can find none, to support the proposition that failure to hire an expert in a malpractice case leads inevitably to § 1927 or inherent-power sanctions where there has not been a summary judgment order, or some other disposition on the merits.

---

[6] Texas law is similar. See Ersek v. Davis & Davis, P.C., 69 S.W.3d 268, 271 (Tex. App. 2002) ("[A] plaintiff in a legal malpractice suit is required to present expert testimony regarding the standard of skill and care ordinarily exercised by an attorney.").

**D.** **Unnecessary Multiplying of Proceedings**

Wolin argues that Plaintiffs unnecessarily multiplied the proceedings by canceling depositions, delaying their Rule 41(a)(2) motion, and continuing the case against Wolin after the Set Top settlement in July 2004. (Wolin Joint Mem. at 24). As to the first point, both sides initiated requests for discovery extensions during this litigation. The issue of the canceled Taiwan depositions already have been covered in this Order. As to the second, Plaintiffs acquired the Set Top shares on September 15, 2004; they made their Rule 41(a)(2) motion on September 23, 2004. This was not undue delay. If Wolin is suggesting that the motion should have been brought in July 2004, the Court tends to agree, but failure to bring a Rule 41(a)(2) motion is not a sanctionable offense. The Court reiterates: Wolin never brought a Rule 12(b)(6) motion for dismissal, a Rule 12(c) motion for judgment on the pleadings, or a Rule 11 motion. The Court is not inclined to hear complaints now that discovery was too expensive and went on for too long.

**E.** **The Texas Bar Grievance**

Finally, Wolin argues that Plaintiffs improperly filed a grievance with the Texas bar over a mere discovery dispute. As explained _supra_ on page 8, the dispute came about as the result of the dispute between the PEWC factions. It appears at present that the grievance is under consideration with the Texas Bar.

There it will remain. It would be unseemly for the Court to find that the grievance was filed in bad faith, only to have the Texas State Bar come to the opposite conclusion.

## CONCLUSION

For the foregoing reasons, the Court declines to sanction Plaintiffs or Coudert under 28 U.S.C. § 1927 or inherent power. The motion is denied. This case is closed and the Court directs the Clerk to remove it from the active docket.

**SO ORDERED.**

**Dated: New York, New York**
**August 23, 2005**

**JOHN F. KEENAN**
**United States District Judge**